Samuel C. STOIA, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 93–1736.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1993.

Decided May 2, 1994.

---

Rhonda A. Anderson (argued), Coral Gables, FL, for petitioner-appellant.

Paul Kanter, Asst. U.S. Atty. (argued), Milwaukee, WI, for respondent-appellee.

Before POSNER, Chief Judge, KANNE, Circuit Judge, and REINHARD, District Judge.*

KANNE, Circuit Judge.

Samuel Stoia was charged in four counts of a multi-count, multi-defendant indictment with various drug offenses relating to his participation in a conspiracy to import and distribute marijuana. The jury found him guilty of conspiracy to distribute and conspiracy to import marijuana, but found him not guilty of two substantive counts of importation of marijuana. The district court originally sentenced Stoia to seventeen years imprisonment on each of the two counts, his sentences to run concurrently. However, the district court subsequently granted Stoia's Fed.R.Crim.P. 35(b) motion and reduced his sentence to 10 years imprisonment on each count, the sentences to run concurrently. Stoia filed a Notice of Appeal of his conviction, but his appeal was voluntarily dismissed.

Stoia then filed a 28 U.S.C. § 2255 petition, alleging that he was denied effective assistance of counsel because one of his defense attorneys had been burdened by an actual conflict of interest. Stoia alleged that attorney Raymond Takiff[1] had an actual con-

---

* The Honorable Philip G. Reinhard, District Judge for the Northern District of Illinois, is sitting by designation.

1. Takiff is a well-known criminal defense attorney who once represented Panamanian dictator Manuel Noriega. *See* Rick Bragg, *Few Show Interest as Noriega Appears in Court*, St. Petersburg Times, September 5, 1991, at 1A.

flict of interest because Takiff had entered into a plea agreement with federal prosecutors whereby he agreed not to "represent individuals charged with crimes under investigation by the United States Attorney's office [or] any federal law enforcement authority...." While acknowledging that Takiff had not entered an appearance in the district court on his behalf, Stoia presented affidavits from his trial attorneys—Vincent Flynn, David Wolfson, and Ronald Walters—stating that Takiff was heavily involved in preparing Stoia's case. In fact, the affidavits indicated that Takiff directed the defense strategy.

The district court denied Stoia's motion, without holding an evidentiary hearing. The court found that Stoia waived his ineffective assistance of counsel claim by failing to raise it on direct appeal. The court also held that, even if Stoia had not waived his claim, his Sixth Amendment rights had not been denied. According to the court, Takiff did not have a conflict of interest because he was not Stoia's counsel of record and did not appear in court on his behalf.

Stoia now asks this court to reverse the district court and to remand his case for a new trial. In the alternative, Stoia requests that we remand this case to the district court for an evidentiary hearing on his claim.

■ When reviewing a district court's decision to grant or deny a federal prisoner's section 2255 petition, we consider all questions of law *de novo*. However, we review all factual determinations for clear error. *Verdin v. O'Leary*, 972 F.2d 1467, 1481 (7th Cir.1992). A section 2255 petitioner is entitled to an evidentiary hearing on his claims, when he alleges facts that, if proven, would entitle him to relief. *Pittman v. Warden, Pontiac Correctional Ctr.*, 960 F.2d 688, 691 (7th Cir.), *cert. denied sub nom. Pittman v. Gramley*, —— U.S. ——, 113 S.Ct. 229, 121 L.Ed.2d 165 (1992).

### Waiver of Ineffective Assistance of Counsel Claim

We must initially determine whether Stoia waived his ineffective assistance of counsel claim by failing to raise it on direct appeal. The district court found that he did. We disagree.

■ A federal prisoner's failure to raise an ineffective assistance of counsel claim on direct appeal will result in forfeiture only when the claim is based entirely on the trial record.[2] *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir.1993). Failure to raise an ineffective assistance of counsel claim on direct appeal will *not* result in forfeiture in the overwhelming majority of cases where a defendant wishes to demonstrate his counsel's ineffectiveness by using evidence outside the trial record. As we have recognized, "[i]n the usual case a criminal defendant will want to seek evidentiary support for his claim of ineffective assistance of counsel outside the trial record and will thus want to present the claim in a postconviction motion, as is his privilege." *Id.* at 472 (citations omitted).

■ Here, it is obvious that Stoia needed to bring forth evidence outside the record of the trial to have any chance of prevailing on his claim. For instance, Stoia needed to show that he retained Takiff to help prepare and participate in his defense. Stoia also needed to present evidence documenting Takiff's conflict of interest and showing how Takiff's conflict of interest adversely affected his defense at trial. This is precisely the type of evidence that does not appear in a trial record. Thus, Stoia's decision to raise his ineffective assistance of counsel claim in a section 2255 petition, rather than on direct appeal, was not only proper, it was wise. *See United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.1991) (A section 2255 petitioner is unlikely to "get to first base if he already has presented a claim of ineffective assistance of counsel to the court of appeals unsuccessfully."); *United States v. Davenport*, 986 F.2d

---

**2.** We have refused to find waiver even where an ineffective assistance of counsel claim is based entirely on the trial record if (1) the defendant was represented by the same attorney both at trial and on direct appeal; (2) at the time of the defendant's direct appeal it reasonably appeared that new evidence might be necessary to support his claim, "though it has since become apparent that the trial record itself was the only evidence that could be presented in support of the claim." *Guinan v. United States*, 6 F.3d at 471–472.

1047, 1050 (7th Cir.1993) ("[A] defendant who presents his ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose.").

Stoia has not forfeited his claim.

### Appearance at Trial as Prerequisite to Sixth Amendment Relief

First, we address the government's assertion that Stoia's Sixth Amendment right to effective assistance of counsel was not violated because Takiff did not file an appearance in the case or actually appear in court on Stoia's behalf.

■ The government contends that recognizing a claim of ineffective assistance of counsel in cases where an attorney has not appeared in court, would be an unwarranted extension of the Sixth Amendment. We agree with the government that a defendant's constitutional right to effective assistance of counsel does not extend to those cases where a non-appearing attorney: (1) gives a defendant legal advice even though he has not been retained by the defendant to help prepare his defense; or (2) is retained by the defendant but his conflict of interest or deficient performance is not reflected in the conduct of the defense at trial. However, we cannot agree that a trial court must be aware of a retained attorney's out of court participation in the case to implicate a defendant's Sixth Amendment rights.

■ An attorney's constitutional ineffectiveness can manifest itself at trial even though the attorney never appears in court. For example, a defendant may hire more than one attorney to work on his criminal case, but only one of them may actually enter an appearance and represent him in court. If a non-appearing attorney is burdened by a conflict of interest, the conflict may, nonetheless, adversely impact the defendant's trial because of that attorney's ability to influence how the defendant's trial attorney conducts the case. Also, an attorney hired to do "behind the scenes" work may, through deficient performance, negatively impact the trial counsel's ability to give the defendant an adequate defense.

For the purpose of resolving the "entry of appearance" issue we assume that Takiff had an actual conflict of interest. Because there is ample evidence that Stoia retained Takiff to help prepare his defense by paying him an initial fee of $10,000 on December 28, 1989, the only real question is whether Takiff's conflict of interest adversely affected the performance of Stoia's trial attorneys and the trial itself. It is undisputed that Stoia's trial was originally set for January 28, 1990, but that a continuation was successfully sought based on Takiff's recommendation. Wolfson, Walters, and Flynn state in their affidavits that they strongly advised against a continuance, because they felt that it would be unwise to give the government extra time to build its case. Stoia rejected his trial attorneys' advice and the trial was continued until March 7, 1990. Shortly before the March trial date, Glen Deppe, a fugitive codefendant, was captured and cooperated with the government. Wolfson states that Deppe, "due to the fact that there was not sufficient time until trial to properly defend against him, was devastating to the case, and was the direct cause" of Stoia's conviction. According to Flynn, from that point on, Stoia made it clear that Takiff "was calling the shots" and "was in charge of strategy."

Wolfson also states that he planned to interview certain witnesses prior to Stoia's trial, but did not conduct the interviews because Takiff "adamantly forbade" him from doing so. Wolfson interviewed three of these witnesses after the trial and states that their "testimony would have been very helpful at the trial of Mr. Stoia."

Attorney Flynn advised Stoia to take the stand on his own behalf, but Takiff indicated that "under no circumstances" should Stoia be called as a witness. Stoia accepted Takiff's advice and did not testify. Flynn also wanted to present a "buyer-seller" defense at trial, but Takiff thought this was "crazy." Again, Stoia accepted Takiff's advice over that of his trial attorneys.

Takiff had also agreed to interview witnesses, prepare pre-trial motions, and to assist with the cross-examination of witnesses. However, he failed to file the pre-trial motions and claimed at the last minute that he

could not attend Stoia's trial because of poor health.

This evidence makes it clear that Takiff, even though he did not file an appearance, was able to influence how Stoia's trial attorneys conducted the case. Takiff "called the shots" and thus directly controlled many aspects of Stoia's defense. Takiff's questionable defense strategy, failure to file pre-trial motions, and last minute failure to appear at trial, demonstrate how his assumed conflict of interest adversely affected Stoia's defense. There is a reasonable likelihood that, but for Takiff's direct control of Stoia's defense, Stoia's trial attorneys' performance would have been different and that Stoia's trial would have been different.

Thus, having determined that the Sixth Amendment is applicable with regard to Takiff's actions carried out on behalf of Stoia, we must decide whether Stoia's allegations indicate that Takiff was burdened by an actual conflict of interest that adversely affected his performance.

### Attorney Conflict of Interest as Ineffective Assistance

■ "It is well settled that '[a] criminal defendant is entitled to counsel whose undivided loyalties lie with the client.'" *United States v. Barnes*, 909 F.2d 1059, 1065 (7th Cir.1990) (quoting *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987)). *See also United States v. Noble*, 754 F.2d 1324, 1333 (7th Cir.), *cert.*

*denied*, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *United States ex rel. Williams v. Franzen*, 687 F.2d 944, 948 (7th Cir.1982)). Thus, a defendant may premise an ineffective assistance of counsel claim on his attorney's conflict of interest. *Id.* (citations omitted). The typical conflict of interest case arises when one attorney represents two or more defendants in the same criminal proceeding. *Id.* (quoting *Ellison*, 798 F.2d at 1106–1107). However, a conflict of interest may also arise when an attorney and his client have divergent interests. *Id.*

A defendant, who has not provided the trial court with notice of his attorney's conflict of interest,[3] may show that he was denied effective assistance of counsel in two different ways. He may proceed under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny, by showing *both* that (1) his attorney had a potential conflict of interest and (2) the potential conflict prejudiced his defense. *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994). Or he may proceed under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), by showing that "an actual conflict of interest adversely affected his lawyer's performance."[4] *Id.* at 348, 100 S.Ct. at 1718.

■ *Cuyler* requires a showing of *both* "an actual conflict of interest" and an adverse effect on the lawyer's performance. *See Cerro*, 872 F.2d at 785–786. If the defendant can satisfy both prongs of the *Cuyler* test,

---

3. The test governing attorney conflict of interests was originally developed in joint representation cases. In that context, it is possible for a criminal defendant to provide notice to the trial judge that he does not want to be represented by the same attorney as his co-defendant because such joint representation may cause the attorney to choose one client's interests over the other. *See Dently v. Lane*, 665 F.2d 113, 117 (7th Cir.1981) (notice may have been given to the trial court when the defendant attempted to fire his public defender). In cases where a conflict of interest results because the attorney and his client have divergent interests, the defendant will generally not know about the conflict at the time of trial and consequently will not be able to provide the trial court with notice of his attorney's conflict. Nonetheless, federal courts have continued to apply the same test to both kinds of attorney conflicts, even though the fit is less than perfect.

*United States v. Soldevila–Lopez*, 17 F.3d 480, 486 (1st Cir.1994); *Cerro v. United States*, 872 F.2d 780, 784 (7th Cir.1989).

4. Other circuits have recognized a *per se* (no showing of adverse effect required) violation of a defendant's Sixth Amendment right to effective assistance of counsel in two limited circumstances: (1) where an attorney, without the defendant's knowledge, has never been admitted to practice law in any state, *see e.g., Solina v. United States*, 709 F.2d 160 (2d Cir.1983); (2) where an attorney is implicated in the same crime as his client, *see e.g., United States v. Cancilla*, 725 F.2d 867 (2d Cir.1984). We have been reluctant to recognize any *per se* Sixth Amendment violations and to date have not done so. *See Bond v. United States*, 1 F.3d 631, 636–637 (7th Cir.1993).

then "prejudice is presumed." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Moreover, "[l]egal representation which is adversely affected by actual conflicts of interest is never considered harmless error." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991). *See also United States v. Swartz*, 975 F.2d 1042, 1048 (4th Cir.1992) (citing *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 468, 86 L.Ed. 680 (1942)).

▆▆▆ An actual conflict of interest results if " 'the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests.' " *United States v. Ziegenhagen*, 890 F.2d 937, 939 (7th Cir.1989) (quoting *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988)). An "adverse effect" occurs when an attorney's actual conflict of interest causes a " 'lapse in representation contrary to the defendant's interests....' " *Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir.1985) (quoting *Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir.1983)).

Not surprisingly, when raising the issue of an attorney's conflict of interest most defendants, including Stoia, proceed under *Cuyler* because it is significantly easier to demonstrate an "adverse effect" than to show "prejudice." Prejudice results under *Strickland* only if there is a reasonable probability that, but for counsel's potential conflict of interest, the defendant would have been found not guilty. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. An adverse effect occurs, if, but for the attorney's actual conflict of interest, there is "a [reasonable] likelihood that counsel's performance somehow would have been different." *Frazer v. United States*, 18 F.3d 778, 787 (9th Cir.1994) (Beezer, J., concurring) (citing *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir.1992); *Thomas v. Foltz*, 818 F.2d 476, 480 n. 3 (6th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987)).

### Actual Conflict of Interest

▆▆▆ The parties have not cited, nor has our research revealed, any cases that are factually similar to this one. However, the courts' reasoning in two analogous cases supports Stoia's position that Takiff may have had an actual conflict of interest.

In *Solina*, the petitioner sought to have his conviction vacated pursuant to section 2255 because his trial and appellate counsel had not been admitted to the bar of any state. The Second Circuit held that the "attorney" was burdened by an actual conflict of interest because he could not have been "wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials." *Solina*, 709 F.2d at 164. The "attorney" was in a position where he was required to choose between his own interest in not being discovered and the defendant's interest in receiving a vigorous defense.

Similarly, in *Cancilla*, the defendant argued that he was denied effective assistance of counsel because his attorney had engaged in criminal conduct related to that for which the defendant was standing trial. The Second Circuit, citing *Solina*, held that the attorney had an actual conflict of interest:

> [W]ith the similarity of counsel's criminal activities to Cancilla's schemes and the link between them, it must have occurred to counsel that a vigorous defense might uncover evidence or prompt testimony revealing his own crimes, even more so than in *Solina*.... What could be more of a conflict than a concern over getting oneself into trouble with criminal law enforcement authorities?

*Cancilla*, 725 F.2d at 870.

This circuit has also recognized the rationale underlying *Solina* and *Cancilla*. *See United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir.1990):

> [W]e have held that an "actual conflict of interest" exists only where there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation.

In this case, in support of his section 2255 petition, Stoia presented a copy of Takiff's November 20, 1987 plea agreement with the United States Attorney's Office for the

Southern District of Florida. In that plea agreement, Takiff agreed to plead guilty to a one-count information charging him with tax evasion for the year 1981.[5] Takiff also agreed to work in an undercover capacity for various law enforcement agencies.[6] The plea agreement also provided in paragraph 9 that:

> The defendant [Takiff] agrees he will not represent individuals charged with crimes under investigation by the United States Attorney's Office, any federal law enforcement authority, the Dade State Attorney's Office or the Florida Department of Law Enforcement or in matters in which the federal government has an interest.

Stoia argues that Takiff had a conflict of interest because he was apparently violating the terms of his plea agreement by "representing" Stoia. Thus, Stoia contends that Takiff was unable to properly carry out his responsibilities in handling Stoia's defense, lest he disclose the violation of his plea agreement.[7]

Stoia also charges that Takiff had an actual conflict of interest because, while representing Stoia, Takiff was under investigation for soliciting perjury and obstructing justice in connection with his representation of one of Stoia's codefendants Adolph Altuve. Stoia maintains that Takiff deliberately defaulted on witness interviews and kept Stoia from testifying in order to prevent the potential introduction of evidence that Takiff had suborned perjury in Altuve's trial.

If, indeed, Takiff had reason to be concerned about disclosing subornation of perjury or reasonably feared that his action in "representing" Stoia would be considered by the U.S. Attorney for the Southern District of Florida to be contrary to the terms of his plea agreement,[8] Takiff would undoubtedly have an actual conflict of interest. It is certainly possible that Takiff was presented with the same choices faced by the attorneys in *Solina* and *Cancilla*—conduct a vigorous and unimpeded defense of Stoia and run the risk that the authorities would discover his asserted subornation of perjury and apparent plea agreement violation—or sacrifice Stoia's defense in hope that his conduct would remain secret. Faced with such a choice, there would be a danger that Takiff would ineffectively represent Stoia "because of fear that authorities might become aware of ... [his] own misconduct if he undertook effective representation." *Balzano*, 916 F.2d at 1293. If such a scenario existed, the danger created would be unacceptable and amount to an actual conflict of interest.

### Adverse Effect on Conduct of Defense

■ Under *Cuyler*, Stoia, in addition to showing that Takiff had an actual conflict of interest, must also demonstrate how that conflict adversely affected Takiff's performance in Stoia's defense. To meet this burden, Stoia presented the uncontested affidavits of his trial attorneys: Wolfson, Walters, and Flynn. As we discussed earlier in this opinion, the affidavits of these attorneys state that Takiff's conflict of interest ad-

---

5. At the time the plea agreement was signed in 1987, the charging information had not been filed. There is no indication in the record before us that Takiff was ever actually charged with tax evasion nor that the plea agreement was approved by the District Court for the Southern District of Florida.

6. Takiff served as the key government witness in the "Operation Court Broom" trial of eight former and current judges in Dade County, Florida. The FBI enlisted Takiff to act as an undercover agent. "Wearing a hidden tape recorder, [Takiff] offered bribes to judges in behalf of fictitious clients." A number of the judges were caught on audio or video tape accepting the bribes. However, only two of them were convicted. Maya Bell Sentinel, *Court Broom No Clean Sweep*, The Orlando Sentinel, April 28, 1993, at B1.

7. This second theory is undercut, however, by the fact that in the same federal courthouse in Milwaukee, before the same district judge, Takiff had previously represented codefendant Altuve and achieved an acquittal. It should be noted that Stoia does not pursue the argument that, by serving as an undercover operative for federal law enforcement agencies, Takiff's allegiance was contrary to that of Stoia. However, that argument will be open to the petitioner on remand in the district court.

8. The government offered *no interpretation* of paragraph 9 nor did it indicate whether Takiff had been determined to be in violation of paragraph 9 and its prohibition against representing any individual under investigation by "any federal law enforcement authority" or "in matters in which the federal government has an interest."

versely affected his performance in two significant ways. First, they state that Takiff had agreed to prepare several unspecified pretrial motions on Stoia's behalf, but failed to do so. The attorneys also state that Takiff was scheduled to appear and participate in Stoia's trial and that Takiff was to assist with the cross examination of witnesses. However, when Takiff was contacted shortly before trial, he claimed that he would be unable to attend the trial because of poor health.

If Takiff was burdened by an actual conflict of interest, there is a reasonable probability that his actions—such as refusing to allow Stoia's trial attorneys to interview certain witnesses and his failure to appear in court, were dictated by fear that the authorities would discover his wrongdoings. If Takiff had a conflict of interest, his conduct would be enough to satisfy the adverse effect prong of the *Cuyler* test.

### Conclusion

To say the least, this is a highly unusual case—made particularly so because of the terms of Takiff's plea agreement and the government's extensive use of Takiff as an undercover operative. Apparently this is not the only case in which Takiff seems to have violated the provisions of his plea agreement. In the Middle District of Florida and the District of Rhode Island, cases involving federal defendants were dismissed because of Takiff's involvement as counsel. There is certainly a possibility that Stoia's Sixth Amendment rights were violated and an evidentiary hearing is warranted.

The judgment of the district court denying the section 2255 petition of Samuel S. Stoia is VACATED and this matter is REMANDED for an evidentiary hearing and disposition.