**Samuel C. STOIA, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 95–2424.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1996.

Decided March 24, 1997.

Rhonda A. Anderson (argued), Miami, FL, for petitioner–appellant.

Paul Kanter (argued), Office of the United States Attorney, Milwaukee, WI, for U.S.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case requires us to consider whether Samuel C. Stoia was denied effective assistance of counsel at his drug trafficking conspiracy trial. To answer this question, we must determine whether Stoia's legal representation was adversely affected because one of his lawyers had an actual conflict of interest. We agree with the district court that Stoia received effective representation, and thus we affirm its decision denying Stoia's petition for a writ of habeas corpus.

## I. HISTORY

In the fall of 1988, thirty-seven defendants were charged in the Eastern District of Wisconsin with various offenses relating to a prolonged and far-reaching drug trafficking conspiracy. Samuel Stoia, one of the defendants named in the indictment, was charged with one count of conspiracy to distribute marijuana, one count of conspiracy to import marijuana, and two substantive counts of marijuana importation. Stoia was successful in avoiding arrest for nearly a year, and thus by the time he was apprehended as a fugitive in Hawaii on September 13, 1989, most of his codefendants had already been tried.

Between his initial appearance in the Eastern District of Wisconsin on October 18, 1989, and his detention hearing on October 23, 1989, Stoia had retained three lawyers, all of whom entered appearances on his behalf in district court. These lawyers were Vincent Flynn of Miami, Ronald Walters of Chicago, and Stoia's friend, David Wolfson, also of the Miami area. Flynn was to serve as lead counsel, Walters was retained as local counsel, and Wolfson (who had no criminal experience) was designated to do the investigative work and serve as a liaison to Stoia. In fact, Wolfson was a confidant to Stoia and a "watchdog" over Flynn.

During the next several weeks Stoia claimed that he was unable to communicate directly with Flynn. Moreover, Flynn found it necessary to obtain a continuance of the December 5 trial date because of a conflict with another trial setting. Stoia's trial was continued to January 8, 1990. As a result, Stoia became disillusioned with Flynn's representation. Stoia had been impressed with the efforts of attorney Raymond Takiff in the earlier trial of his codefendants because Takiff's client, Adolph Altuve, had been acquitted. Takiff was a well-known South Florida criminal defense attorney who in the past had represented such high-profile clients as Panamanian dictator Manuel Noriega. Stoia

asked Wolfson to contact Takiff. Wolfson was assisted in this endeavor by Walters who was acquainted with Takiff.

After Wolfson contacted Takiff, Takiff wrote Stoia a letter indicating his interest in representing Stoia and asking Stoia to place a phone call to Takiff. Takiff expressed considerable interest in representing Stoia, informing Stoia that he was very familiar with the intricacies of the case because he had represented one of Stoia's codefendants at the earlier trial and had obtained an acquittal. Takiff claimed that he had a host of decisive pretrial motions that he wished to have filed on Stoia's behalf. Eventually there was an understanding that Takiff would do legal work on the case for Stoia for a fee of $15,000. By mid-December, Stoia and Takiff reached a verbal agreement concerning the work Takiff would do. Takiff thereafter made repeated requests to be paid an initial $10,000.

Stoia made the arrangements to pay the initial $10,000 retainer by a trust account check dated December 28, 1989. The check was made payable to Ray Takiff, drawn on The Southeast Bank of Miami, and received by Wolfson in the mail from a Bahamian lawyer. Wolfson personally delivered the $10,000 check to Takiff. The check was endorsed by Takiff and negotiated.

As Stoia's January 8, 1990 trial date drew near, Takiff—without informing attorneys Flynn and Wolfson—directed attorney Walters to seek a continuance. Walters was successful, and the trial was continued and reset for March 6, 1990. About the same time, Takiff advised Stoia through Wolfson that his fee now would be $20,000 and an additional $10,000 needed to be paid.

With the increase in the fee, Stoia insisted that Takiff enter into a written retainer agreement. Takiff drafted a two-page agreement in the form of a letter addressed to Wolfson backdated to October 27, 1989. In the retainer agreement, Takiff indicated that he would undertake the preparation and structuring of the cross-examination of certain government witnesses and that he would develop various motions prior to trial. Takiff also stated, "It is impossible for me to warrant, guarantee, or otherwise promise to en-

ter a formal appearance and take an active role in this case." For his service Takiff indicated he would accept a contract fee of $15,000 plus $5,000 for expenses, for a total of $20,000. Stoia's second payment was made to Takiff within a day or two after February 9, 1990. A $10,000 cashier's check dated February 9 drawn on Canadian Imperial Bank of Commerce and made payable to Ray Takiff was again received by Wolfson in the mail from the same Bahamian lawyer. Wolfson in turn delivered the check to Takiff. Upon delivery of the fee, Takiff signed the backdated retainer agreement in Wolfson's presence and Wolfson signed on behalf of Stoia. Takiff then endorsed and negotiated the check.

From that point on, little else was heard from Takiff. Flynn continued to prepare for trial. Notwithstanding Takiff's refusal to agree that he would participate at trial, there was an assumption by Flynn, and apparently by Stoia, that Takiff would be in the courtroom in Milwaukee. Through a message Flynn received when he arrived at his hotel in Milwaukee just prior to trial, Flynn learned that Takiff was ill and would not be present for the proceedings. Takiff did indicate that he would be available to provide assistance by phone. At the commencement of the trial, the three lawyers who had entered their appearances (Flynn, Walters, and Wolfson) were present in court with Stoia. Wolfson contacted Takiff, and Takiff reiterated that he was ill and would not attend. In addition, contrary to Flynn's strategy, Takiff advised Stoia not to take the witness stand as a part of his defense. Stoia followed Takiff's advice and did not testify.

The jury convicted Stoia of the conspiracy to distribute and conspiracy to import counts, but acquitted him on the two counts of importation. On June 17, 1991, Stoia was initially sentenced to two terms of seventeen years in prison each, the terms to run concurrently. Stoia filed a notice of appeal of his conviction, but he later voluntarily dismissed the appeal. On May 1, 1992, Stoia filed a motion under Federal Rule of Criminal Procedure 35(b) to reduce or modify his sentence, which the district court granted,

reducing each of his two terms of imprisonment to ten years.

In 1993, Stoia filed a 28 U.S.C. § 2255 petition, alleging that he had been denied effective assistance of counsel because Takiff had an actual conflict of interest that adversely affected Takiff's representation of Stoia. The district court denied Stoia's petition without holding an evidentiary hearing, finding that Stoia had waived his ineffective assistance of counsel claim by failing to raise it on direct appeal and that Stoia's Sixth Amendment rights could not have been violated because Takiff had not entered an appearance on his behalf. On appeal, we vacated the district court's decision and remanded the case for an evidentiary hearing. *Stoia v. United States*, 22 F.3d 766 (7th Cir.1994) ("*Stoia I*"). After conducting an evidentiary hearing, the district court again denied Stoia's petition, finding that the record did not support the existence of an actual conflict of interest and, in the alternative, that there was no adverse effect arising from Takiff's conduct.

## II. ANALYSIS

Upon appeal from a district court's denial of a § 2255 motion, we review questions of law de novo and factual questions for clear error. *Bond v. United States*, 77 F.3d 1009, 1012 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 270, 136 L.Ed.2d 194 (1996). A defendant's ineffective assistance of counsel claim is a mixed question of law and fact, and is also reviewed de novo. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir.1996); *see Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); *Cerro v. United States*, 872 F.2d 780, 783–86 (7th Cir.1989).

"It is well settled that '[a] criminal defendant is entitled to counsel whose undivided loyalties lie with the client.'" *United States v. Barnes*, 909 F.2d 1059, 1065 (7th Cir.1990) (quoting *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986)). Therefore, a defendant may bring an ineffective assistance of counsel claim premised on the fact that he and his attorney possessed divergent interests. *Stoia I*, 22 F.3d at 770. Such an ineffective assistance of counsel may

be demonstrated in two different ways: (1) the defendant may proceed under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by demonstrating that the attorney had a potential conflict of interest and that this potential conflict prejudiced his defense, *Stoia I*, 22 F.3d at 770 (citing *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)); or, (2) the defendant may proceed under *Cuyler v. Sullivan*, by showing that "an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718. Stoia has elected to proceed under the *Cuyler* framework, which requires a showing of both an actual conflict of interest and an adverse effect on the attorney's representation of the defendant. *Cerro*, 872 F.2d at 785–86.

An actual conflict of interest exists if "the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia I*, 22 F.3d at 771 (quoting *United States v. Ziegenhagen*, 890 F.2d 937, 939 (7th Cir. 1989)). Such a conflict has an adverse effect if "but for the attorney's actual conflict of interest, there is 'a [reasonable] likelihood that counsel's performance somehow would have been different.'" *Id.* (quoting *Frazer v. United States*, 18 F.3d 778, 787 (9th Cir.1994) (Beezer, J., concurring)).

Stoia offers two bases for his contention that Takiff had an actual conflict. First, Stoia notes that Adolph Altuve, together with several of the defense witnesses at Altuve's trial, have been indicted for perjury. Stoia contends that Takiff was guilty of suborning this perjury during Altuve's trial, and that he urged Stoia's other attorneys not to interview potential Stoia defense witnesses out of a fear that the witnesses' testimonies would unmask Takiff's complicity in the perjury. This argument, however, has little merit. First of all, the government investigated Takiff concerning the perjury elicited at Altuve's trial, and it uncovered no evidence whatsoever that Takiff was aware his witnesses were lying. Therefore, it appears he would have had nothing to hide. Secondly, even if Takiff had been involved in the perjury at Altuve's trial, none of Stoia's potential

defense witnesses had any personal knowledge of whether Takiff was involved in the perjury, and thus Takiff would have had no incentive to prevent their interrogation. When asked at oral argument what Takiff would have had to fear from the potential defense witnesses' testimony, counsel for Stoia responded that the potential witnesses, principally Henry Poulet, might have testified that Altuve had actually been involved in the drug conspiracy and thereby demonstrated that the witnesses at Altuve's trial (who testified that Altuve was innocent) were lying. But Takiff would have had no reason to fear testimony that Altuve was a member of the drug conspiracy. At Altuve's trial, every one of the government's witnesses offered testimony that Altuve was part of the conspiracy, contrary to what Altuve and his witnesses claimed. Such contradiction indicates only that there was perjury; it does not implicate Takiff as a participant in the perjury. Only the five individuals who were indicted for perjury would have had any knowledge of whether Takiff was involved in the perjury, and it is undisputed that none of these five individuals was a potential defense witness for Stoia. Therefore, we agree with the district court that there existed no conflict of interest as a result of Takiff's fear that witness interviews would uncover evidence of his alleged involvement in perjury at Altuve's trial.

█ Stoia's second ground for demonstrating an actual conflict of interest stems from a plea agreement Takiff entered into on November 20, 1989 in the Southern District of Florida. Under this plea agreement, Takiff agreed to plead guilty to one count of tax evasion, to cooperate with the federal government as a confidential informant as part of Operation Court Broom in Miami, and to refrain from representing "individuals charged with crimes under investigation by the United States Attorney's Office, any federal law enforcement authority, the Dade State Attorney's Office or the Florida Department of Law Enforcement or in matters in which the federal government has an interest."

In *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir.1990), we held that "an 'actual conflict of interest' exists only where there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation." Stoia argues that because Takiff was working undercover with the federal government and was forbidden from representing defendants in a federal criminal trial, Takiff had an incentive to avoid making himself visible in Stoia's trial so that the government would not learn of his representation in violation of the plea agreement. Thus, the question is whether Takiff's conduct was motivated by a desire to keep his representation of Stoia from coming to the attention of the U.S. Attorney's Office in the Southern District of Florida.

At the time of trial, no one connected with the Stoia case (except Takiff of course) knew of the Takiff plea agreement. Stoia claims that Takiff's decision not to come to Milwaukee and appear at trial was prompted by Takiff's fear that his violation of the plea agreement would be discovered. The district court, however, rejected this argument because at the time of Stoia's March trial date in 1990, Stoia and his lawyers were in possession of documentary evidence which disclosed that Takiff was providing Stoia with legal representation in anticipation of trial. Takiff had already corresponded with Stoia indicating his intent to assist in his defense. A retainer agreement (obviously backdated) had been prepared by Takiff and signed in February in Wolfson's presence. Finally, Takiff had received, by way of a Bahamian lawyer, two $10,000 checks which he endorsed and negotiated. In light of this trail of documents, the district court found that the more likely scenario would have been that Takiff's representation of Stoia would have come to light because of Takiff's decision not to participate in the trial. If indeed Takiff's representation was so crucial to Stoia's defense, a request for continuance based on Takiff's "illness" would have logically been forthcoming, and Takiff's presence would become manifest.

While this reasoning certainly is plausible, we find persuasive the arguments suggesting

that Takiff's plea agreement violation demonstrated that there was an actual conflict of interest. Merely because Takiff made himself somewhat visible by entering into a retainer agreement and accepting money for Stoia's representation does not mean that Takiff was necessarily visible to the U.S. Attorney's office in the Southern District of Florida. Takiff may have failed to attend the trial so that his representation of Stoia would not become *even more visible* than it already might have been. Moreover, Takiff's client and his co-counsel remained completely unaware of Takiff's agreement not to represent any criminal defendants against the United States. Thus, we believe that it is likely that Takiff had an actual conflict of interest.

In *Stoia I*, we held that if Takiff were shown to have an actual conflict of interest:

> Takiff's questionable defense strategy, failure to file pre-trial motions, and last minute failure to appear at trial, demonstrate how his assumed conflict of interest adversely affected Stoia's defense.
>
> . . .
>
> If Takiff was burdened by an actual conflict of interest, there is a reasonable probability that his actions ... were dictated by fear that the authorities would discover his wrongdoings. If Takiff had a conflict of interest, his conduct would be enough to satisfy the adverse effect prong of the *Cuyler* test.

22 F.3d at 770, 773. We premised our conclusion that Stoia's defense was adversely affected on the uncontested affidavits submitted by Stoia in his habeas petition. After a full evidentiary hearing, however, the adverse effect is much less clear. Our review of the thorough evidentiary hearing now leads us to the conclusion that Stoia failed to show the connection between any actual conflict of interest and any adverse effect on Stoia's defense.

As both the district court and other courts have noted, the two *Cuyler* requirements—actual conflict of interest and adverse effect—are often intertwined, thus causing an overlap in the factual analyses. *United States v. Stoia*, 887 F.Supp. 1229, 1233 (E.D.Wis.1995); *see United States v. Tatum*, 943 F.2d 370, 375 (4th Cir.1991). An

"adverse effect" occurs when a lawyer's actual conflict of interest causes a "lapse in representation contrary to the defendant's interests." *Stoia I*, 22 F.3d at 771 (quoting *Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir.1985)). In this case, the alleged deficiencies in Takiff's performance did not arise from his desire to keep himself hidden. Moreover, any lapse in Takiff's performance did not impair Stoia's overall defense. Thus, we agree with the district court that Stoia is not entitled to habeas relief.

Stoia claims that the actual conflict of interest arising out of Takiff's violation of his plea agreement with the government led to the following adverse effects: Takiff failed to prepare pretrial motions; Takiff failed to interview certain witnesses and forbade Wolfson from doing so; Takiff continued the trial from January to March, 1990; Takiff advised Stoia not to take the stand and provided other trial strategies contrary to the advice of Flynn; Takiff failed to appear at trial and assist with cross-examination; and Takiff alienated Stoia from the other defense lawyers. The testimony from the evidentiary hearing demonstrates the lack of merit in Stoia's claims.

First of all, Takiff's failure to prepare any pretrial motions neither demonstrated his desire to keep his representation hidden, nor impaired Stoia's defense. Takiff never made a formal appearance in the district court, and testimony at the evidentiary hearing revealed the not unusual practice of lawyers "ghosting" motions for other lawyers. Thus, Takiff's failure to prepare his self-proclaimed powerful, in-depth, and decisive motions could not have resulted from his intention to remain hidden because Takiff's name would never have appeared on the motions. Moreover, Flynn testified at the evidentiary hearing that he could not imagine how any further pretrial motions (beyond those already filed by Flynn) would have improved Stoia's case.

Second, as we expressed above, there was no connection between any wrongdoing on Takiff's part and Takiff's failure to interview witnesses. In this regard, Flynn (but not

Wolfson) also stated that he did not believe that any further investigation was necessary.

Third, Takiff's advice to continue the trial from January to March also reveals no connection between any conflict of interest and any adverse effect. It is true that the government's case against Stoia improved during the continuance when a new individual (Glen Deppe) was arrested and subsequently agreed to testify against Stoia. This occurrence, however, was completely fortuitous. There was no evidence that Takiff's advice for the defense to seek a continuance was in any way related to the government's ability to obtain a new witness. Rather, Flynn opined at the evidentiary hearing that Takiff likely sought the continuance so that Takiff could collect his fee. Moreover, cases can get either stronger or weaker over time; for example, the government's witnesses could have died or changed their stories during the continuance. Thus, this continuance (which, by the way, was the second one in this case— Flynn had previously moved for a continuance in December, pushing the trial to January) in no way demonstrates the relationship between any actual conflict and any adverse effect.

Fourth, under the particular circumstances of this case, we find that Takiff's failure to appear at trial and cross-examine witnesses did not present an adverse effect. Takiff foreshadowed the likelihood that he might not attend the trial. In the retainer agreement, Takiff wrote:

> It is impossible for me to warrant, guarantee, or otherwise promise to enter a formal appearance and take an active role in this case. In fact, I think such an event would be a disservice to your client. I have known Vinnie Flynn for years. We have tried cases together on various occasions and I think the world of him! It is impossible, however, for BOTH he and I to properly represent the same man. (A banjo act should never follow a banjo act.) In addition to this fact any jury would immediately look at your client in wonder that he could afford TWO Miami lawyers.

Moreover, Stoia and his attorneys never sought a continuance or otherwise attempted to enforce the retainer agreement when Takiff said he was sick and would not be able to attend the trial. Had Takiff been so important to the defense team that his failure to appear at trial could be considered ineffective assistance of counsel, Stoia or one of his other lawyers could have shown the retainer agreement to the district judge and moved for a continuance. Finally, we find unproblematic the fact that Takiff failed to cross-examine witnesses on Stoia's behalf. Stoia had the services of Flynn, who was an able trial lawyer by all accounts.

Fifth, Flynn admitted, and both the district court and this court agree, that Takiff's advice for Stoia not to testify was a sound and ethical strategy. Had Stoia testified, the jury may have heard about Stoia's prior drug trafficking conviction. This information, as well as other information regarding Stoia's life as a fugitive under an assumed name in Hawaii could have destroyed his credibility as a witness. Moreover, we fail to see how Takiff's fear of the government discovering his violation of the plea agreement influenced the trial strategy that he provided to Stoia. Thus, the decision to keep Stoia off the witness stand was sound and apparently uninfluenced by any conflict of interest.

Finally, we also agree with the district court in rejecting Stoia's claim that Takiff created an adverse effect by undermining Stoia's confidence in Flynn. Before trial, Stoia chose to have four lawyers working for him in various capacities. The inability of these four attorneys to agree on all aspects of trial strategy is not surprising. Stoia has only himself to blame for taking the advice of one of these lawyers (Takiff) over the advice of another (Flynn). Perhaps the most telling example of Stoia's game of "musical lawyers" is the fact that on the day of trial, he sought assistance from a fifth lawyer—Carl Mostell—to discuss a plea agreement with the government because Flynn refused to be a party to such negotiations.

We realize that the adverse effect prong of the *Cuyler* test analyzes how a *particular* lawyer's actual conflict of interest may have adversely affected his performance. But in a case such as this, where a defendant is adequately represented by several lawyers and the defendant's overall representation is not impaired by any actual conflict, we will not reverse a defendant's conviction based upon ineffective assistance of counsel. *Compare*

*Tatum,* 943 F.2d at 376–80 (reversing defendant's conviction due to actual conflict of interest of former defense counsel who also provided assistance to defendant's trial counsel and sat at the defense table during trial), *and Hoffman v. Leeke,* 903 F.2d 280, 287 & n. 3 (4th Cir.1990) (holding that co-counsel's participation in trial did not cure conflict of interest created by lead counsel who prepared the case without co-counsel's assistance and remained defendant's primary lawyer throughout the trial), *with Tatum,* 943 F.2d at 382–83 (Britt, J. dissenting) (rejecting the proposition that former defense counsel's conflict necessarily tainted defendant's trial counsel and suggesting that a collateral evidentiary hearing rather than a new trial was the appropriate remedy), *and Turner v. Williams,* 812 F.Supp. 1400, 1434 (E.D.Va. 1993) (finding that the defendant was not prejudiced by one of his lawyer's actual conflict of interest because his lead counsel provided effective, conflict-free representation), *aff'd,* 35 F.3d 872 (4th Cir.1994). To hold otherwise would allow defendants represented by multiple lawyers to take two bites at the apple simply by showing that one of the lawyers was somehow conflicted in his representation. As the district court put it,

> there just is no way that one can fairly view this case and determine that Sam Stoia was denied his sixth amendment right to counsel. In fact, he received better lawyering than most defendants get. At every step of the proceedings against him—from arraignment through sentencing—he had Vincent Flynn at his side. Flynn was a more than competent defense lawyer. His folksy approach to the case probably accounts for the 50–50 verdict, two "not guiltys" to go with two "guilty" verdicts. In addition, Stoia had Walters at his side during the trial and Wolfson at his beck and call. Their activities in the case underscore the finding that Stoia had more than adequate legal talent at his disposal.

*Stoia,* 887 F.Supp. at 1235.

The judgment of the district court denying Samuel C. Stoia's motion for relief under § 2255 is AFFIRMED.