NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2008
Decided January 21, 2009

**Before**

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-1095

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>DION C. LAKE,<br>    *Defendant-Appellant.* | Appeal from the United States<br>District Court for the<br>Western District of Wisconsin.<br><br>No. 07-CR-68-C-01<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

Dion Lake pleaded guilty to possessing crack with intent to distribute. Before entering his plea, however, his attorney filed a motion to withdraw asserting an actual conflict of interest. A magistrate judge concluded that there was no actual or potential conflict and denied the motion. On appeal Lake argues principally that the court did not adequately investigate the alleged conflict. He also contends that his sentence is unreasonable because it rests largely on uncharged conduct.

In 2004, law enforcement officers learned that Dion Lake was distributing crack cocaine in the Beloit, Wisconsin, area. Two years later, in May 2006, police arrested

George Taylor, who claimed that the 20 grams of crack he was carrying came from Lake. Taylor also reported that he had bought crack from Lake on eight other occasions, though Taylor did not estimate the total quantity. Approximately seven months later, a confidential source made a controlled buy of .113 grams of crack from Lake. In addition to Taylor and the unnamed source, 11 other individuals disclosed to investigators that they had purchased crack from Lake during 2004 to 2006. Lake, meanwhile, was arrested in January 2007 following a traffic stop; he had .104 grams of crack in his pocket.

Lake was charged with three counts of possessing crack with intent to distribute, but he agreed to plead guilty to one count in exchange for dismissal of the other two. In October 2007, after the parties executed a plea agreement but before it was submitted to the district court, Lake's attorney, Mark Maciolek, filed a motion to withdraw. Maciolek explained that he was sharing office space with attorney Richard Jacobson, who represented George Taylor--Lake's 20-gram purchaser--when Taylor was prosecuted a year earlier. Jacobson's representation of Taylor ended in 2006; a federal public defender represented Taylor on appeal. Maciolek explained that he discovered Jacobson's representation of Taylor in October 2007--some two months after he was appointed to represent Lake. Maciolek started sharing office space with Jacobson in June 2007, and in his motion he asserted that, although the two law firms are "legally separate entities," his firm and Jacobson's firm "share confidences and office space to the extent that they are one firm for purposes of the rules of professional conduct." For that reason, according to Maciolek,

> continued representation of Mr. Lake would violate SCR 20:1.10(a), which prohibits counsel from knowingly representing a client when any lawyer in the firm would be prohibited from representing that client under SCR 20:1.9. SCR 20:1.9(a) states that counsel shall not represent another person whose interests are materially adverse to the interests of a former client. Counsel believes that Mr. Lake's and Mr. Taylor's interests are materially adverse.

Following a telephonic hearing with Maciolek and the prosecutor, Magistrate Judge Crocker denied the motion. Judge Crocker's order following the hearing says:

> Upon confirming with the parties that Mr. Lake, by counsel, had signed a plea agreement and was prepared to enter a guilty plea in this

case, and upon ascertaining from the government that it did not intend to call George Taylor as a witness at sentencing, I denied without prejudice Attorney Maciolek's motion to withdraw. In the absence of a trial or sentencing hearing at which George Taylor might testify, there is no actual conflict here and there is no appearance of a conflict that would call into question the adequacy of Attorney Maciolek's representation of Lake. (Indeed, from the court's perspective, I failed to see any actual conflict created by Attorney Maciolek's officing arrangements with George Taylor's attorney, but that issue no longer is before the court.)

In the event the guilty plea does not go through or in the event that Taylor becomes a witness in some capacity at some proceeding in this case, then Attorney Maciolek may renew his motion and the court will do what justice requires at that time. Right now, however, there is no need to replace Attorney Maciolek as Lake's lawyer.

Approximately a week later the district court accepted Lake's plea of guilty. The probation officer tallied the total amount of crack attributable to Lake at 1.9 to 2.3 kilograms, which included the 20 grams reported by Taylor. Lake objected to that estimate as "unreasonable" because he could not identify 2 of the 12 customer-informants without their street names, but he later withdrew that objection. At sentencing, though, Lake argued that the total drug quantity was imprecise and that the actual amount was something less than 1.5 kilograms. That argument worked. The district court (Chief Judge Barbara Crabb) acknowledged "some give in the amounts of drugs involved" and found that Lake was actually responsible for at least 500 grams but less than 1.5 kilograms of crack. Lake's total offense level of 31, when paired with his criminal history category of VI, yielded a guidelines imprisonment range of 188 to 235 months. The court imposed a term of 188 months.

Lake's chief argument is that the magistrate judge did not adequately probe the alleged conflict of interest. Lake notes that Maciolek's motion "was resolved by a telephone conference" and that he was not even present. Lake also points out that the court's ruling rested in part on the prosecutor's assurance that Taylor would not testify at sentencing. Yet by reporting the 20-gram purchase, Lake reasons, "Taylor *was* a witness at sentencing. He just didn't testify and submit himself to cross-examination."

Lake submits that there were only two appropriate responses to the motion to withdraw: the magistrate judge "should have made an inquiry and either (1)

determined whether Mr. Lake was aware of, and willing to waive, the conflict or (2) appointed new counsel to represent Mr. Lake at sentencing." Because the court did neither, Lake contends, he is entitled to a new sentencing hearing with a new attorney. We review de novo his assertion that a conflict prevented effective assistance of counsel. *United States v. LaFuente*, 426 F.3d 894, 897 (7th Cir. 2005).

The Sixth Amendment guarantees every criminal defendant the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). That right is violated when counsel faces a potential conflict of interest but proceeds anyway and causes actual prejudice to his client. *See Strickland*, 466 U.S. at 688; *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004); *Stoia v. United States*, 22 F.3d 766, 770 (7th Cir. 1994). The right to counsel is also violated when an *actual* conflict of interest arising from multiple representation has an adverse effect on the defense. *See Cuyler v. Sullivan*, 446 U.S. 335, 346-47 (1980); *Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir. 1996). An "adverse effect" is something less than actual prejudice; counsel's performance is adversely affected if there is a reasonable likelihood that he would have performed differently if not for the conflict of interest. *Hall*, 371 F.3d at 974; *Stoia*, 22 F.3d at 771. Whether this lower threshold applies to cases where an actual conflict of interest arose from successive rather than multiple representation is questionable but, in this circuit, assumed to be so. *See Mickens v. Taylor*, 535 U.S. 162, 176 (2002); *Hall*, 371 F.3d at 973; *United States v. Holman*, 314 F.3d 837, 845 (7th Cir. 2003). At least in instances of multiple representation, a trial court has a duty to adequately investigate an alleged conflict of interest provided the court is aware--or reasonably should be aware--of the situation. *See Mickens*, 535 U.S. at 176; *Cuyler*, 446 U.S. at 346-47; *Holloway v. Arkansas*, 435 U.S. 475, 483-88 (1978); *see also* FED. R. CRIM. P. 44(c).

Lake's premise is that Maciolek's office-sharing arrangement with attorney Jacobson effectively made them a single "firm" that previously represented George Taylor and was now representing him. But nowhere in his brief does Lake defend this premise, and unless it is sound, his appellate claim has no traction. In similar situations we have examined whether two attorneys "engaged in practices that are typical of partnership relations, such as paying rent for their shared office space jointly, commingling client revenues, or routinely representing common clients." *Gray-Bey v. United States*, 156 F.3d 733, 739 n.2 (7th Cir. 1998); *see also Allison v. Ficco*, 388 F.3d 367, 370 (1st Cir. 2004) ("[A]n actual conflict of interest will not be inferred merely from law partners' representation of co-defendants with antagonistic defenses, even where the partners discussed each other's cases, shared common research, or otherwise collaborated to an extent short of sharing their clients' confidences."). Lake does not

provide this sort of detailed information, however.  And we do not know whether Maciolek communicated any further details of his relationship with Jacobson to Magistrate Crocker because we do not have a transcript of the hearing.

Even if Lake is correct that sharing offices with Jacobson effectively put Maciolek in the position of representing first Taylor and then him, successive representation does not by itself create an actual conflict of interest.  An actual conflict of interest exists if a lawyer is torn between advancing the interests of different persons, and that standard is not met by "'mere proof that a criminal defendant's counsel previously represented a witness.'"  *Enoch*, 70 F.3d at 1496 (quoting *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987)); *see United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002).  Instead, a defendant must show that counsel's earlier representation was substantially and particularly related to counsel's later representation of the defendant or that counsel actually learned specific confidential information during the earlier representation that was relevant to defendant's case.  *Hall*, 371 F.3d at 973; *Enoch*, 70 F.3d at 1496-97; *see also Moss v. United States*, 323 F.3d 445, 459-60 (6th Cir. 2003) (collecting cases).  Underlying this rule is the fear that an attorney's loyalty will be divided if counsel is faced with the possibility of cross-examining a former client.  *See Hall*, 371 F.3d at 973; *Enoch*, 70 F.3d at 1496.  In Lake's case, however, Judge Crocker appreciated this possibility, which is why he invited Maciolek to renew his motion at a later stage if the prospect emerged.  At that precise moment, however--the eve of Lake's guilty plea--there was no reason for concern because there was no foreseeable trial nor any expectation that Taylor would testify at Lake's sentencing hearing.  Moreover, Maciolek did not suggest in his motion to withdraw that he possessed confidential information about Taylor that was relevant to Lake's case.  Nor did Maciolek provide reason to believe that there was a substantial and particular relationship between the representation of both men.  Lake does not suggest otherwise, which dooms his contention that Maciolek labored under an actual conflict of interest.  *See Mickens*, 535 U.S. at 171 (observing that an actual conflict of interest requires more than "mere theoretical division of loyalties").

Equally problematic is that Lake does not explain how he was adversely affected by Maciolek's continued representation.  Lake asserts that he is entitled to relief under *Holloway*, which states that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic."  *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978).  But Lake ignores two critical features of that rule.  First, Maciolek never engaged in *joint* representation.  *See* FED. R. CRIM. P. 44(c).  Second, the Supreme Court has clarified that *Holloway*'s rule of reversal is not quite automatic.  *See Mickens*, 535 U.S. at 172-73.  A defendant still must demonstrate an adverse effect under *Cuyler*.

*Id.* And here Lake comes up short as well. In his brief he speculates that, but for Jacobson's representation of Taylor a year earlier, Maciolek likely would have cross-examined Taylor at sentencing, even going so far as to suggest that by discrediting Taylor, Lake's overall drug quantity would have dropped to less than 500 grams. Lake offers no support for that scenario, though, and the record contains none.

Because he cannot demonstrate an actual conflict that adversely affected his defense, Lake must articulate prejudice under *Strickland*. But he does not even attempt that route, so there is no need for further analysis.

Lake next argues that his sentence is unreasonable because he "was convicted of selling 0.1 grams of drugs but . . . sentenced for selling over 1500 grams." Lake's rationale is unclear, but he seems to be asserting that his sentence is substantively unreasonable because it is much greater than the sentence that he would have received for the offense conduct alone. That argument cannot bear fruit. The district court carefully considered the factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the offense and the need to provide just punishment, before determining that a sentence at the bottom of the guidelines was appropriate. *See Gall v. United States*, 128 S.Ct. 586, 596-97 (2007); *United States v. Reuter*, 463 F.3d 792, 792-93 (7th Cir. 2006). Nothing more was required, particularly in this case because Lake never made this specific argument before the district court.

Another possible interpretation of Lake's argument is that, in cases like his where uncharged conduct increases the sentence "nearly seven fold," the district court must find that the relevant conduct is supported by clear and convincing evidence. But we have rejected that proposal countless times, and Lake provides no reason to revisit a closed debate here. *See, e.g., United States v. Pira*, 535 F.3d 724, 728-29 (7th Cir. 2008); *Reuter*, 463 F.3d at 792-93 (upholding preponderance-of-the-evidence standard in light of *United States v. Booker*, 543 U.S. 220 (2005)).

For these reasons, the judgment of the district court is AFFIRMED.