In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-2194

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

FABIAN LAFUENTE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 881—**Harry D. Leinenweber**, *Judge*.

ARGUED JUNE 1, 2005—DECIDED OCTOBER 18, 2005

Before BAUER, RIPPLE, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Fabian Lafuente was convicted by a jury of attempting to possess with intent to distribute cocaine, possessing with intent to distribute cocaine, and possessing a firearm with an altered, removed, or obliterated serial number. He was sentenced to 300 months' imprisonment. Lafuente appeals his conviction, arguing that his trial counsel had labored under a conflict of interest due to her representation of a different defendant in another case. The district court denied his motion for a new trial, and, because Lafuente suffered no adverse impact from his attorney's representation, we affirm his conviction. Lafuente also challenges his sentence in light of *United*

*States v. Booker*, 125 S. Ct. 738 (2005); on that matter we grant a limited remand.

## I. History

Attorney Andrea Gambino was defense counsel for both Fabian Lafuente and Eddie Cardona. The timing of her representation of these two individuals is important to this case, so we will endeavor to lay it out clearly. Gambino's representation of Cardona began on April 26, 2002. This was after Cardona had appeared with different counsel, in September and October 2001, to proffer information to the government in connection with the case against him. Attorney Keri Ambrosio entered her appearance for Cardona on October 4, 2002, and she worked together with Gambino on his case until December 4, 2004, when she was granted leave to withdraw.

Gambino and Ambrosio entered their appearances for Lafuente on October 9, 2002, in the proceedings which eventually led to this appeal. Lafuente had been charged in December 2001 with attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count One), possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two), possessing a firearm with an altered, removed, or obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count Three), making a false statement designed to deceive a firearms dealer in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) (Count Four), and possessing a firearm in furtherance of the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924 (c)(1) (Count Five). A jury trial beginning on September 16, 2003, concluded with a verdict on September 22 convicting

Lafuente of Counts One, Two, and Three.[1] The government did not call Cardona as a witness in Lafuente's trial, and there is no indication that Cardona's name was ever identified on a list of potential government witnesses.

On September 22, 2003, the government filed its version of the offense setting forth the general bases on which it sought to increase the amount of drugs for which Lafuente would be held responsible at sentencing. Cardona's name was not mentioned in this filing.

On October 7, 2003, Gambino and Ambrosio filed a motion to withdraw as Lafuente's counsel. This motion was granted on October 9. Eventually, after two other attorneys were hired or appointed and then terminated in succession, George Leighton represented Lafuente.

On October 15, 2003, the government filed a supplemental version of the offense, which, for the first time, named Cardona as someone with knowledge of Lafuente's prior drug dealings, gang affiliation, nickname, and possession of firearms.

On February 13, 2004, Lafuente (through Leighton) filed a motion for a new trial based on ineffective assistance of counsel. Specifically, Lafuente argued that Gambino had failed to disclose to him certain disciplinary and mental health problems that she had, that she failed to call material witnesses, that she pressured him to testify, that she failed to make certain objections at trial, and that she did not make adequate motions to suppress evidence. Lafuente also claimed that Gambino did not inform him that she had been representing Cardona, which he claimed was a conflict of interest. Lafuente requested an evidentiary hearing on his motion for a new trial.

---

[1] The government moved to dismiss Count Four the day before trial, and the jury acquitted Lafuente of Count Five.

The district court denied both Lafuente's motion for an evidentiary hearing and his motion for a new trial on March 11, 2004. The court noted that it had advised Lafuente of Gambino's disciplinary issues, and that Lafuente had indicated he wanted to proceed with Gambino as his trial counsel. The court also stated that Gambino's and Ambrosio's representation of Lafuente at trial was "most adequate."

Finally, on April 28, a sentencing hearing was conducted. The government presented evidence of additional quantities of cocaine attributable to Lafuente's drug trafficking activities. ATF Special Agent Mark Anton was called to testify regarding Lafuente's involvement in the drug trafficking of the Insane Deuces street gang, among other things. When Anton was questioned about an interview with Cardona, he was unable to recall the date of the interview; the government attorney did not ask any further questions about Cardona. (4/28/04 Tr. at 17-18.) Detective Tom Wolek of the Elgin, Illinois, Police Department testified on the subject of letters written by Lafuente (found in the home of another Insane Deuces gang member) that suggested Lafuente's unwillingness to cooperate with the government. (4/28/04 Tr. at 45-47, 54 ("The only way you would get less time is by working with these people and you know a nigga ain't gonna get down like that.").) Lafuente himself testified at the sentencing hearing, verifying that in the letters referred to by Wolek he was stating his unwillingness to cooperate with the government and that "I'm not going to testify or . . . [t]ell on nobody." (4/28/04 Tr. at 114-15.)

While the jury had found Lafuente guilty of possessing at least 2 kilograms and attempting to possess at least 5 kilograms, the district court concluded that 14 kilograms of cocaine were attributable to Lafuente. This increased amount was not based on information provided by Cardona, but on other evidence presented by the government.

Fourteen kilograms translated to a base offense level of 32 under the Sentencing Guidelines. The district court increased that level for possession of at least two handguns during commission of the offense (two levels), a leadership position in the Elgin Insane Deuces (four levels), and obstruction of justice in the form of false testimony (two levels). The total offense level was therefore brought to 40. With one criminal history point, Lafuente was in Criminal History Category I. The applicable sentencing guidelines range as determined by the district court was thus 292-365 months. The court ultimately chose a sentence of 300 months' imprisonment for Counts One and Two, and 60 months' imprisonment for Count Three, with sentences to run concurrently.

## II.  Analysis

Lafuente appeals both his conviction, arguing that his attorney's conflict of interest resulted in unconstitutionally ineffective assistance of counsel, and his sentence, on *Booker* grounds.

### A.  *Ineffective Assistance of Counsel*

The standard of review for claims of a conflict of interest resulting in ineffective assistance of counsel is *de novo*. *Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir. 1997). Criminal defendants are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest, at all stages of the proceedings against them. *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (internal quotations and citations omitted).

Lafuente first argues that he is entitled to automatic reversal or a remand for an evidentiary hearing under *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978), because the district court did not adequately investigate his conflict

claim. *See Holleman v. Cotton*, 301 F.3d 737, 742 (7th Cir. 2002) ("Under *Holloway* and *Cuyler*, a trial court has the duty to inquire adequately into a trial counsel's conflict of interest if it knows or reasonably should know that a particular conflict exists."). *Holloway* dealt with a much different situation than we have here: in that case, an attorney representing three co-defendants at the same trial brought his perceived conflict to the attention of the district court twice prior to trial, but the district court denied the attorney's motion to appoint separate counsel and required the attorney to represent all three defendants. *Holloway*, 435 U.S. at 477-78. The Supreme Court reversed and remanded, holding that the district court's failure to appoint separate counsel, or to inquire further into whether the risk of a conflict was too remote to warrant separate counsel, deprived the defendants of effective assistance of counsel. *Id.* at 484. Subsequent Supreme Court decisions have limited the *Holloway* holding to situations in which the district court requires joint representation over a timely objection. *See Mickens v. Taylor*, 535 U.S. 162, 168-69 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). In Lafuente's case, not only was there no joint representation, but Lafuente did not indicate any conflict of interest prior to or during his trial.

Lafuente contends that the district court's inquiry into the conflict claim was inadequate under standards set forth in other cases as well. He cites *United States v. Gallegos*, a Tenth Circuit case in which the defendant's attorney was faced with cross-examining a former client who invoked his Fifth Amendment right not to testify. 108 F.3d 1272, 1279 (10th Cir. 1997). The court held that the district court's failure to appoint separate counsel for the witness, take adequate steps to ascertain whether the risk was too remote to warrant separate counsel, or determine whether the defendant and the witness were willing to waive their rights to conflict-free representation required reversal. *See id.* at

1282. In Lafuente's case, Cardona was never listed as a potential government witness while Gambino represented Lafuente, so Gambino was never faced with cross-examining a former client to the detriment of a current client. When the conflict of interest issue was raised, after trial and when Lafuente was already being represented by a new attorney, the court considered the evidence before it (which included the entire trial record) and, denying Lafuente's request for a new trial, determined that no conflict existed. This was an adequate inquiry.

The Fourth Circuit case cited by Lafuente, *United States v. Gilliam*, did involve a defendant who asserted a conflict of interest at sentencing. 975 F.2d 1050, 1054 (4th Cir. 1992). But that was another case of joint representation, and the district court was reversed for its failure to follow Federal Rule of Criminal Procedure 44(c), which requires a trial judge to advise co-defendants about their right to effective and separate representation. *See id.* As we have already noted, Lafuente's case involved no joint representation; Rule 44(c) was not implicated, and the trial court had discretion to determine what type of hearing was necessary to address Lafuente's conflict of interest claim. *See United States v. Fish*, 34 F.3d 488, 493 (7th Cir. 1994). Lafuente was not entitled to a presumption of prejudice; we move on to an analysis under *Cuyler*. *See id.*

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. We need not determine whether an actual conflict existed in this case because Lafuente cannot show that Gambino's representation of Cardona adversely affected her performance in his case. *See Hall*, 371 F.3d at 974. In order to demonstrate an adverse effect, Lafuente must show that "there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest." *Id.*

The government never listed Cardona as a potential witness at trial. The information proffered by Cardona had nothing to do with the offenses of which Lafuente was accused, but rather with Lafuente's prior drug dealings and gang involvement, which were only relevant for sentencing purposes. Thus, Gambino did not face the possibility of having to cross-examine him to the detriment of either Cardona or Lafuente. Lafuente's only argument related to an adverse effect is that Gambino's representation of Cardona foreclosed the possibility of an agreement under which Lafuente would testify against Cardona in exchange for a recommendation by the government for a reduced sentence. There is more than adequate evidence in the record and recounted above to show that Lafuente was dead set against cooperation with the government, and that a plea bargain was never a possibility. Lafuente's own letters and trial testimony admitted as much. "If the petitioner's counsel could not have done anything differently, if there was no alternative course of action, then there can be no Sixth Amendment violation, even if a conflict of interest existed." *Cates v. Superintendent of Ind. Youth Ctr.*, 981 F.2d 949, 955 (7th Cir. 1992). Finally, we note that the information provided by Cardona did not form the basis for any sentencing enhancement.

### B. Sentencing

Lafuente contends that he was sentenced in violation of the Sixth Amendment because the district court treated the Sentencing Guidelines as mandatory and made findings of fact that increased his sentence. The court did hold Lafuente responsible for 14 kilograms of cocaine (the jury found him guilty of possession in excess of 2 kilograms and attempted possession in excess of 5 kilograms) and also increased the base offense level on findings of gun possession, gang leadership, and obstruction of justice. In *United*

*States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that factual findings used to increase a defendant's sentence must be made by a jury beyond a reasonable doubt.

Because Lafuente did not raise this issue in the district court—despite his assertions to the contrary, his objections at sentencing related only to the reliability of certain information used by the Probation Office in its Presentence Investigation Report—our review is for plain error. *See Booker*, 125 S. Ct. at 769. Under that standard, we may exercise our discretion to correct error if it is plain, it affects substantial rights, and it equates to a miscarriage of justice. *See United States v. Banks*, 405 F.3d 559, 572 (7th Cir. 2005). We have stated that a miscarriage of justice occurs if a district court, in having thought itself bound by the guidelines, imposes a longer sentence than it would have if it had been aware of its ability to exercise its discretion. *Id.* Pursuant to our decision in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), we order a limited remand of this case so that the district court can answer the question of whether it would have imposed the same sentence even under advisory guidelines. We will then know whether plain error occurred in this case.

## III.  Conclusion

For the foregoing reasons, we AFFIRM Lafuente's conviction. While retaining jurisdiction, we REMAND this case for the limited purpose of allowing the district court to advise us whether it would have imposed the same sentence knowing that the guidelines are not mandatory.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*