# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2484

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NICHOLAS GRIGG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 CR 276—**J.P. Stadtmueller,** *Judge.*

ARGUED JANUARY 24, 2006—DECIDED MARCH 24, 2006

Before RIPPLE, ROVNER and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In February 2004, Nicholas Grigg was indicted on one count of possession of child pornography. *See* 18 U.S.C. § 2252(a)(4)(B). In accordance with a plea agreement, he pleaded guilty and was sentenced to 37 months' imprisonment and two years' supervised release. Mr. Grigg now challenges his sentence. He contends that the district court did not understand that it had the authority, post-*Booker,* to depart from the sentencing range recommended by the Sentencing Guidelines. For the reasons set forth in the following opinion, while retaining jurisdic-

tion, we remand the case to the district court for proceedings consistent with this opinion.

# I

## BACKGROUND

On December 9, 2003, a grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment, charging Mr. Grigg with possession of computer video and image files depicting minors engaged in sexually explicit activity. *See* 18 U.S.C. § 2252(a)(4)(B). Mr. Grigg pleaded guilty to this charge on February 19, 2004. At the sentencing hearing, the district court calculated an advisory sentencing range of 37 to 46 months' imprisonment, to which the defendant did not object. Mr. Grigg did, however, call two witnesses, Dr. George Palermo and his father, Richard Grigg. Dr. Palermo opined that Mr. Grigg suffered from various mental problems, including a "bipolar illness." R.37 at 10. He also testified that Mr. Grigg may have been off his medication when downloading the child pornography. Richard Grigg testified about his son's personal problems, including a poor work history, suicide attempts, a weight problem and mental illness. Noting Mr. Grigg's mental and personal problems, as well as *Booker*'s directive that the Guidelines are no longer mandatory, defense counsel requested that the court depart from the advisory guidelines range—although he did not specify what an appropriate sentence might be.

The district court rejected this request and sentenced Mr. Grigg to 37 months' imprisonment and two years' supervised release. "Congress," the court explained, "has seen fit in the PROTECT Act and the Feeney Amendment, basically, to prohibit departures from Sentencing Guide-

lines." *Id.* at 41. Although the court acknowledged that *Booker* and other cases "no longer technically make the Guidelines mandatory," *id.* at 44, it nevertheless explained that the PROTECT Act and the Feeney Amendment "virtually prohibit judges from departing from the otherwise applicable Sentencing Guidelines," *id.* Therefore, in light of this legislation, the court held, it was "obliged to impose the minimum sentence under the Guidelines." *Id.* at 46.

The Government sought clarification of the court's views regarding its discretion to depart from the Guidelines. The Government asked, "[I]s it the Court's position today that it doesn't believe it can go outside the advisory Guidelines because of the nature of the offense and the cases that the Court has cited[?]" *Id.* at 56. The court responded, "No," explaining that it was aware of its "authority in appropriate cases to fashion what [it] believe[s] to be a reasonable sentence in any case." *Id.* at 56-57. It added, however, that "Congress created the Protect Act" because it is, "in the vernacular, 'damn mad' at judges who were continually putting people on probation because they had the wherewithal to bring in an expensive psychiatrist and say, 'This isn't going to happen again.' " *Id.* at 56. Mr. Grigg raised no objections at this time to the sentence imposed by the district court.

## II

## DISCUSSION

### A. Statutory Background

In 2003, Congress responded to a series of atrocious and high-profile child abduction and sexual abuse cases

by enacting the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (codified as amended, in pertinent part, at 18 U.S.C. § 3553(b)(2)(2004)). The PROTECT Act was designed to strengthen the laws and procedures for detecting, investigating, prosecuting and incarcerating child kidnappers and sexual offenders, including those who possess child pornography. Section 401(d)(1) of the Act—named the "Feeney Amendment" after the provision's author, Representative Thomas Feeney of Florida—contained a far-reaching set of sentencing reforms. In pertinent part, the provision amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the Sentencing Guidelines in sexual offense and child pornography cases.[1] *See* PROTECT Act, § 401(b), 117 Stat. at 668-69; 18 U.S.C. § 3553(b)(2). This legislation preceded *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court held that

---

[1] The Feeney Amendment also: (1) eliminated several grounds for downward departure in child kidnapping and sexual offense cases; (2) expanded the grounds for appellate reversal of downward departures; (3) limited district courts' ability to downwardly depart on remand; (4) prohibited the U.S. Sentencing Commission from creating new downward departure guidelines for the next two years; and (5) conditioned certain departures and adjustments on a government motion. *See generally* PROTECT Act, Pub. L. No. 108-21, § 401, 117 Stat. 650, 667-76 (2003)(codified as amended, in pertinent part, at 18 U.S.C. § 3553(b)(2) (2004)). In addition, the Feeney Amendment granted appellate courts the authority to review a lower court's departure from the Guidelines de novo. *See* 18 U.S.C. § 3742(e). The Supreme Court in *United States v. Booker*, 543 U.S. 220, 259 (2005), severed and excised this latter provision from the Act.

the mandatory application of the Sentencing Guidelines violates the Sixth Amendment. The Court's holding in *Booker*, however, focused only on those portions of the United States Code that generally govern the application of the Sentencing Guidelines to crimes. *See* 18 U.S.C. § 3553(b)(1). The Court had no occasion to address whether the sentencing restrictions governed by the Feeney Amendment also violate the Sixth Amendment. It is that question to which we now turn.

### B. The Continued Vitality of the Feeney Amendment post-*Booker*

Mr. Grigg submits that the district court incorrectly interpreted the Feeney Amendment as cabining the court's discretion to impose a non-Guidelines sentence; to read the Feeney Amendment in such a way, according to Mr. Grigg, is inconsistent with the Supreme Court's holding in *Booker*. Because Mr. Grigg did not object to the district court's application of the Sentencing Guidelines at his hearing, however, we must review the district court's decision only for plain error. *United States v. Lafuente*, 426 F.3d 894, 899 (7th Cir. 2005). We shall overturn the judgment of the district court if its error was plain, affected the defendant's substantial rights and rose to the level of a miscarriage of justice. *Id.*

In *Booker*, the Supreme Court held that a sentencing judge's mandatory application of the Sentencing Guidelines violates the Sixth Amendment when facts increasing the sentencing range have been found by the judge, rather than stipulated to by a defendant or found by a jury beyond a reasonable doubt. *Booker*, 543 U.S. at 243-44. As a remedy, the Court severed and excised 18 U.S.C. § 3553(b)(1), which

mandated that, in the absence of unusual circumstances, the district court impose a sentence within the applicable guidelines range. *Booker*, 543 U.S. at 245-46. The Court, however, had no occasion to mention § 3553(b)(2)—the provision added to the statute by the Feeney Amendment, which governs the application of the Sentencing Guidelines to sexual offense crimes. *See* PROTECT Act, § 401(b), 117 Stat. at 668-69; 18 U.S.C. § 3553(b)(2). We now must confront the question of whether *Booker*'s rationale for excising § 3553(b)(1) from the statute also extends to § 3553(b)(2).

Although this is a question of first impression for us, the Second and Tenth Circuits have determined that § 3553(b)(2) possesses the same Sixth Amendment defect as does § 3553(b)(1). *See United States v. Selioutsky*, 409 F.3d 114, 117 (2d Cir. 2005) ("There is no principled basis for distinguishing subsection 3553(b)(1) from 3553(b)(2) with respect to the rationale of *Booker*."); *United States v. Yazzie*, 407 F.3d 1139, 1146 (10th Cir. 2005) ("[W]e hold that treating the Guidelines as mandatory—regardless of whether the defendant is sentenced under § 3553(b)(1) or § 3553(b)(2)—is error."); *United States v. Sharpley*, 399 F.3d 123, 127 n.3 (2d Cir. 2005) ("[W]e see no unique feature of Guidelines sentences for child crimes and sexual offenses that would prevent them from violating the Sixth Amendment in the same manner as Guidelines sentences for other crimes.").

We concur with our sister circuits. According to § 3553(b)(2), when sentencing defendants for crimes involving children and sexual offenses, the district court "shall impose a sentence" within the calculated guidelines range, unless it finds mitigating circumstances that have "been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28."

*See* 18 U.S.C. § 3553(b)(2)(ii); *see also id.* § 3553(b)(2)(iii). This language mirrors that of § 3553(b)(1); the sole difference between the two subsections is that § 3553(b)(2) restricts stringently the mitigating circumstances that qualify for a downward departure, whereas § 3553(b)(1) defines those circumstances more broadly. *Compare id.* § 3553(b)(1) ("Except as provided in paragraph (2), the court *shall impose a sentence of the kind*, and within the range, referred to in subsection (a)(4) . . . .") (emphasis added), *with id.* § 3553(b)(2) ("In determining whether a circumstance was adequately taken into consideration, the court *shall consider only the sentencing guidelines*, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress.") (emphasis added).

In reviewing § 3553(b)(2) in light of *Booker*, we conclude that it violates the Sixth Amendment by mandating a sentence within the range recommended by the Sentencing Guidelines. It was precisely this requirement that the Supreme Court found constitutionally objectionable in *Booker*. Given the similarities between the two subsections, we believe the same objections voiced by that Court also apply to § 3553(b)(2). In reaching this conclusion, we join the Second and Tenth Circuits and hold that § 3553(b)(2) is subject to the same remedy that *Booker* imposes: "excising and severing" the mandatory language and replacing it with an "advisory Guidelines regime" under which sentences are reviewed for reasonableness. *See Selioutsky*, 409 F.3d at 117; *Yazzie*, 407 F.3d at 1145-46; *Sharpley*, 399 F.3d at 127 n.3; *see also Booker*, 543 U.S. at 258-63.

We are mindful of Congress' view, expressed in the PROTECT Act, regarding prosecuting and sentencing

child kidnappers and sexual offenders. Although we must hold today that § 3553(b)(2) cannot constrain the discretion of a district court to impose a sentence outside the range recommended by the Sentencing Guidelines, we nevertheless believe that district courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that crimes such as Mr. Grigg's are serious offenses deserving serious sanctions.[2]

## C. The District Court's Application of the Sentencing Guidelines

With § 3553(b)(2) excised, the applicable sentencing regime for Mr. Grigg is the advisory Guidelines approach set forth by the Supreme Court in *Booker*. *See* 543 U.S. at 246-47; *see also United States v. Woodard*, 408 F.3d 396, 399 (7th Cir. 2005). In this case, the district court's statements regarding its understanding as to whether the Feeney Amendment constrained its discretion to sentence Mr. Grigg below the range recommended by the Sentencing Guidelines may be inconsistent. For instance, although the court stated at the hearing's outset that it would "consult" the Sentencing Guidelines when fashioning a sentence under 18 U.S.C. § 3553(a)(2), as required by "*Blakely*, *Booker*, *Fanfan*

---

[2] *See, e.g.*, PROTECT Act, § 501(12), 117 Stat. at 678 (presenting congressional findings) ("Child pornography results from the abuse of real children by sex offenders; the production of child pornography is a byproduct of, and not the primary reason for, the sexual abuse of children."); 149 Cong. Rec. S5113, S5124 (2003) (statement of Sen. Hatch) ("We believe that in these child molestation cases, pornography cases, prostitution cases, child rape cases, and kidnapping cases the sentencing guidelines ought to be followed.").

and *Paladino,*" R.37 at 5, it later stated that "Congress has seen fit in the Protect Act and the Feeney Amendment, basically, to prohibit departures from Sentencing Guidelines," *id.* at 41. As the hearing progressed, the court again seemed to indicate that the Feeney Amendment's provisions are mandatory, noting that they "virtually prohibit judges from departing from the otherwise applicable Sentencing Guidelines." *Id.* at 44. Later, the court indicated in a more explicit manner that it considered itself bound to apply the Guidelines:

> [A]gainst the entire backdrop of what underlies what Congress had in mind when child pornography was criminalized, and, more to the point, what Congress had in mind last year when they adopted the Child Protect Act and the Feeney Amendment, which basically precludes judges [from] departing from the Sentencing Guidelines in cases of this type, *I'm obliged to impose the minimum sentence under the Guidelines.*

*Id.* at 46 (emphasis added).

Although the court acknowledged elsewhere that the Guidelines are "advisory," *see, e.g., id.* at 5, these statements are nonetheless unclear given that the court also asserted that the Feeney Amendment prohibits discretionary sentences outside of the guidelines range. For example, at the close of the hearing, the Government asked the district court, "[I]s it the Court's position today that it doesn't believe it can go outside the advisory Guidelines[?]" *Id.* at 56. The court replied, "No," but then remarked:

> The Court is very much aware—Congress has spoken. And this is [a] very unique area of the law. Congress created the Protect Act.

And for the reasons that are—I articulated, Congress is, in the vernacular, "damn mad" at judges who were continually putting people on probation because they had the wherewithal to bring in an expensive psychiatrist and say, "This isn't going to happen again."

*Id.* at 56.

Viewing the record in its entirety, we must conclude that the district court *may have* plainly erred in treating the Guidelines as binding authority. Following the procedure established in *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005), a limited remand is in order.[3] The district court should state whether it understood that, notwithstanding the mandatory language of the Feeney Amendment, it was not bound by the Guidelines, and if it did not, whether, in light of our opinion in this case, it wishes to resentence Mr. Grigg.

## Conclusion

We order a limited remand with respect to Mr. Grigg's sentence while retaining jurisdiction in accordance with the procedures set forth in *Paladino*.

REMANDED

---

[3] At oral argument, the Government stated that it does not oppose remanding the case to permit the district court to clarify its position.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*