**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthoni SMITH, Defendant–Appellant.**

No. 06–1749.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 8, 2006.

Decided Aug. 10, 2006.

Jesse M. Barrett, Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee.

William J. Stevens, Lakeside, MI, for Defendant–Appellant.

Before Hon. DANIEL A. MANION, Circuit Judge, Hon. ILANA DIAMOND ROVNER, Circuit Judge, Hon. DIANE S. SYKES, Circuit Judge.

## ORDER

Anthoni Smith entered a blind plea of guilty to two counts of possession of a firearm as a felon, *see* 18 U.S.C. § 922(g)(1). He appeals his sentence of 12 months and one day's incarceration. Because we cannot discern from the record whether the district court properly appreciated its ability to impose a sentence below the advisory sentencing guidelines after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we vacate and remand this case for resentencing.

## I. Background

In October 2004, Smith, who had a prior felony theft conviction, was pulled over by police twice in four days; on each occasion, the arresting officers found a different firearm under Smith's seat. On the first occasion, on October 19, a police officer observed Smith's car crossing the center line and stopped him to administer a sobriety test. Smith was not intoxicated, but when the officer learned from his dispatcher that there was "an active body attachment" for Smith from a local probate court, he took Smith into custody. The officer then performed an inventory search of Smith's car and discovered four baggies of marijuana, a Glock 9–millimeter pistol, and 9–millimeter ammunition. Three days later, on October 22, another officer stopped Smith for not wearing his seatbelt. Smith's vehicle had been under observation, apparently pursuant to a narcotics investigation, and a K–9 unit soon arrived on the scene. The dog alerted officers to the presence of narcotics in the vehicle, but when they searched they failed to find any. Rather, officers found another 9–millimeter pistol, manufactured by Smith & Wesson, as well as more 9–millimeter ammunition.

Smith was indicted on two counts of possession of a firearm as a felon. 18 U.S.C. § 922(g)(1). In December 2005 Smith pleaded guilty without the benefit of a plea agreement. The presentencing report calculated a net offense level of 12, including a two-level decrease for the acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Smith accrued three criminal history points for his predicate felony conviction, placing him in Criminal History Category II. He received no points for earlier auto theft and narcotics convictions that resulted in probation or suspended sentences. The report accordingly arrived at an advisory guidelines sentencing range of 12 to 18 months' imprisonment.

Smith asked the district court to impose a sentence below this range, explaining that he carried the Glock pistol for protection because his work as a delivery driver took him through "high crime areas of South Bend," because he had been the victim of a carjacking, and because his stepson had been murdered. He was carrying the Smith & Wesson, he said, only to transport it to his mother's house for safekeeping because he had realized that it should not be in his possession. (The government responded to this contention by noting that the pistol was loaded, with a round chambered, when police found it.) Smith also argued that his criminal history

score overstated the seriousness of his prior offenses, since his prior felony conviction dated back to 1989. Accordingly, he requested a sentence below the guidelines range.

On the day of the sentencing hearing, Judge Sharp distributed a proposed sentencing memorandum. He explained that he had been "trying to experiment with different ways in which to do this very unpleasant, complicated and very difficult sentencing process," and that the memorandum was "not final until it's final." The memorandum first discussed Smith's request for a downward departure under U.S.S.G. § 4A1.3, and declined to apply it. The memo also specifically noted that the court was "aware of the discretion afforded to it by *Booker* to depart downward if it finds that the Defendant's criminal history overstates the seriousness of his prior offenses." The memorandum explained that the court would not sentence Smith below the guidelines range, however, because "while there is nearly a ten-year gap between the first offenses and the instant offense ... the prior offenses are not the simple misdemeanor convictions" that would justify a sentence below the range. Rather, the memorandum singled out Smith's theft and narcotics convictions as deserving a sentence within the guidelines range. The proposed memorandum characterized the court's decision to sentence Smith within the guidelines range as an exercise of "the discretion afforded to it under U.S.S.G. § 4A1.3 to depart downward" on the basis of an overstated criminal record. It also discussed Smith's request for a non-guidelines sentence and considered his explanation that he possessed the guns for self-defense along with the other 18 U.S.C. § 3553(a) factors. The proposed memorandum explained that because "these offenses involved firearms and because Defendant possessed loaded guns twice within a four-day period," the

district court "declines to exercise its discretion to enter a non-guideline sentence."

At the March 3 sentencing hearing, Smith's counsel, William Stevens, argued that he should be sentenced below the guidelines range because his criminal history score exaggerated his record, because of his community service, and because he possessed the weapons for self-defense. Smith also addressed the court and reiterated that he carried the weapons because of the high crime rate in his community. He emphasized the 2002 murder of his stepson and his own experience as the victim of a carjacking. He also gave the court new information on his personal circumstances, such as his desire to remain active in his children's lives due to their educational needs and his child-support obligations.

Judge Sharp, deviating from his position in the proposed sentencing memorandum, told Smith that he would like to sentence him below the guidelines range but believed that he could not because "the way that I read the decisions that are coming down in this circuit, I don't think that I have a lot of wiggle room here." Judge Sharp did not, however, elaborate as to why he thought a sentence below the guidelines range was appropriate. He then stated, "I'm going to do what is very distasteful to me, but I believe that it is demanded under the Guidelines, but I am going to give it in a way that will give this defendant and his lawyer a chance to let me have a chance to look at this a second time." He explained the process he envisioned:

> I am going to give you enough time to revisit this and to focus in on whether, consistent with the decisions in this circuit, I can do what you want to do. I am very inclined to want to do it, but I think I am hemmed in. So what I'm

going to do is to enter the sentence that is reflected in the memorandum, and then I am going to give an extended time to this defendant to report; and in that interim, I will give you a chance to try to convince me that I have—without violating the recent decisional law in this circuit, that I can do what you want. Specifically, Judge Sharp gave Smith three months in which to report, and invited Stevens to "convince me in very great detail—you're going to have to dig in chapter-and-verse—to convince me that I can do what you want." In the interim, he said, he would "carefully—I do mean carefully—review the case law in this circuit to see whether or not I can do what you're asking." This was necessary according to Judge Sharp because the "case law in this circuit indicates that [the Guidelines] have to be followed in most instances." He said that he had "not seen . . . cases in this circuit that have upheld sentences that go outside of the Guidelines." Finally, he explained to Stevens that the delayed reporting time was "breathing time here to give you a chance to do what I want to do, rather than what the Guidelines and the law under the Guidelines say I have to do."

Stevens responded by telling Judge Sharp that he would file "a very detailed memorandum," but pointed out that "under Rule 35, the court loses jurisdiction to correct a sentence within seven days." Judge Sharp told Stevens that the "seven days is for clerical—I don't want to mislead you, but I think it's basically clerical." He also suggested that Stevens could simply file the memorandum within the seven days. Stevens asked the court to delay imposition of the sentence, but Judge Sharp entered the sentence in the proposed memorandum—12 months and one day's incarceration.

Smith did not file a memorandum as Judge Sharp suggested; rather, he filed a notice of appeal on March 10, seven days after the sentencing hearing. Three days later, the district court entered a memorandum and order reading, in its entirety:

> This court takes note of the proceedings held on March 3, 2006 and especially the sentencing memorandum that was entered on that date. The Court has had an opportunity to reflect on the contents of that Memorandum and has decided to let it stand without modification. Certainly no disrespect is meant to the able counsel of this defendant in this regard.

On appeal, Smith contends that the district court misapprehended its authority to sentence him below the guidelines range and failed to properly announce the rationale for its decision in open court.

## II. Analysis

■ After *Booker*, the district court had "discretion to impose a reasonable sentence that is outside the [guidelines] range." *United States v. Miller*, 450 F.3d 270, 275 (7th Cir.2006). Because the court's comments at sentencing suggest that it misapprehended this authority, Smith's sentence must be vacated. The district court's sentencing memorandum in and of itself contains an adequate sentencing analysis: it properly calculates a guidelines sentence, refuses to depart under U.S.S.G. § 4A1.3, briefly addresses Smith's arguments under § 3553(a), and explains the court's reasoning for the sentence imposed. *See United States v. Rodriguez–Alvarez*, 425 F.3d 1041, 1046 (7th Cir.2005). Significantly, in the memorandum Judge Sharp explicitly recognizes his "discretion to enter a non-guideline sentence." But the memorandum was composed before the sentencing hearing, and Judge Sharp's statements at the hearing strongly suggest that although he wanted to sentence Smith below the guidelines range, he believed that our precedent de-

nied him that authority. The sentencing transcript suggests that Judge Sharp either changed his mind about the appropriate sentence in this case or did not accurately relate his position in the sentencing memorandum.

Judge Sharp explained at the hearing that the bottom-of-the-range sentence he imposed was "very distasteful to me," but that he believed that it was "demanded under the Guidelines." "I am very inclined" to impose a below-guidelines sentence, he said, but "I think I am hemmed in." The unusual procedure the district court proposed for taking further argument after the imposition of the sentence was intended to "convince me in very great detail ... that I can" grant a non-guidelines sentence. And Judge Sharp specifically disclaimed the advisory nature of the guidelines when he instructed Stevens to file a supplemental memorandum: "I don't think you can get there by merely saying that the Supreme Court in *Booker* said that the Guidelines are advisory. The case law in this circuit indicates that they have to be followed in most instances." He indicated that he was unaware of any case in which we have affirmed a below-guidelines sentence, and that the precedent emphasized adherence to the guidelines: "Most of the case law is about whether or not the Guidelines have been followed in case after case after case." (Although far from frequent, we have in the past affirmed below-guidelines sentences. *See, e.g., United States v. Baker,* 445 F.3d 987, 991–92 (7th Cir.2006) (affirming as reasonable a sentence 21 months below the bottom of the guidelines range). And in 2005 alone, district courts in this circuit imposed nearly a number of sentences citing *Booker* and going below the relevant guidelines range. "Table 8: Sentences Relative to the Guidelines Range by Circuit and District, Fiscal Year 2005, Post-*Booker* (January 12, 2005, through September 30,

2005)," United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2005, Seventh Circuit,* available at http://www.ussc.gov/JUDPACK/2005/7c05.pdf (last visited August 8, 2006), at 29.)

We addressed a similar situation in *United States v. Grigg,* 442 F.3d 560 (7th Cir.2006). In *Grigg,* the district court believed that its sentencing discretion was limited by 18 U.S.C. § 3553(b)(2) (establishing sentencing factors for "child crimes and sexual offenses"). The sentencing court in *Grigg* noted the advisory nature of the guidelines and cited Seventh Circuit precedent setting out the proper discretionary standards, but nevertheless decided that it was "obliged to impose the minimum sentence under the Guidelines." *Grigg,* 442 F.3d at 565. We held that the inconsistency was enough to require a remand to determine whether the district court understood its discretion: "Viewing the record in its entirety, we must conclude that the district court *may have* plainly erred in treating the Guidelines as binding authority." *Id.* Similarly, Judge Sharp's inconsistent statements require a remand because his comments at sentencing lead us to believe that he may not have understood that he was able to sentence Smith below the guidelines minimum.

The government argues that the proposed sentencing memorandum goes through all of the required steps of a post-*Booker* sentencing analysis. It characterizes Judge Sharp's request for supplemental briefing as an "act of generosity" of which Smith failed to avail himself. But this is a mischaracterization. Although the memorandum, standing alone, is an adequate analysis, Judge Sharp's commentary at the hearing makes it plain that he believed that we would overturn a below-guidelines sentence, and that this meant that he did not have actual discretion.

Judge Sharp told Smith, for example, that our precedent "indicates that [the guidelines] have to be followed in most instances." And although the government characterizes any possible error as harmless, it bears the burden of showing harmlessness. *See United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Larson,* 417 F.3d 741, 747 (7th Cir.2005). Given Judge Sharp's ·comments at sentencing, we cannot be certain that he would have imposed the same sentence if he had more clearly comprehended his discretion.

■ Aside from any *Booker* error, the district court's decision to impose a sentence in anticipation of future briefing was improper. Judge Sharp lost jurisdiction over the case once he imposed sentence: a district court "may not modify a term of imprisonment once it has been imposed" except, as relevant here, pursuant to Federal Rule of Criminal Procedure 35. 18 U.S.C. § 3582(c); *see also United States v. Smith,* 438 F.3d 796, 799 (7th Cir.2006). And under that rule the district court could have modified the sentence only upon the motion of the government or, within seven days of its imposition, to correct an "arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). There was no such motion before the court, nor was any contemplated. Moreover, the correction that Judge Sharp proposed would have been substantive rather than clerical. Accordingly, it would not have been possible for the district court to amend the sentence it entered even if Stevens had submitted the supplemental argument it invited and it had found that argument persuasive.

■ Smith makes two other arguments that are moot in light of our decision to vacate and remand the case for resentencing. The first is that the district court's invitation to his counsel to submit further argument shows that the court's "consideration was incomplete," and that this requires reversal. But the district court performed all the tasks required of a post-*Booker* sentencing court: it calculated a guidelines range, addressed the various factors of 18 U.S.C. § 3553(a), and explained its reasoning. *See Rodriguez–Alvarez,* 425 F.3d at 1046. The flaw in the district court's process was not a failure to perform the necessary analyses, but rather a misapprehension of its authority to impose the sentence it believed was appropriate after that consideration.

■ Second, Smith argues that the district court erred by not adequately explaining the rationale for its sentence in open court. A sentencing court must "state in open court the reasons for its imposition of the particular sentence" at the time of sentencing. 18 U.S.C. § 3553(c). Because the bulk of the district court's reasoning was contained in its proposed memorandum, Smith argues, it failed to abide by this requirement. But only a "general discussion of the § 3553(a) factors" is required when, as here, the sentence is within the guidelines range. *Rodriguez–Alvarez,* 425 F.3d at 1047. And the district court provided a detailed analysis in its proposed memorandum, which was distributed to the parties and placed on the record at the sentencing hearing.

We thus vacate Smith's sentence and remand for an expedited resentencing. In light of the fact that he is presently serving his sentence, we direct that resentencing occur as quickly as is practical so that, should the district court decide to impose a below-guidelines sentence, Smith will not be deprived of the benefit.